IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MICHAEL B. REED, et al.,                    )
                                            )
  Plaintiffs,                     )
                                            )
v.                                          )   No. 3:18–CV–201
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
  Defendant.                      )
_____     )
                                            )
BRITTANY N. HYRE ANCULLE, et al.,           )
                                            )
  Plaintiffs,                     )
                                            )
v.                                          )   No. 3:18–CV–308
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
  Defendant.                      )
_____     )
                                            )
BRITTANY ADKINS, et al.,                    )
                                            )
  Plaintiffs,                     )
                                            )
v.                                          )   No. 3:18–CV–310
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
  Defendant.                      )
_____     )
                                            )
JAMES CARL VANCE, et al.,                   )
                                            )
  Plaintiffs,                     )
                                            )
v.                                          )   No. 3:19–CV–283
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
  Defendant.                      )

```
_____        )
                                 )
JACKIE SUE BARNES, et al.,       )
                                 )
        Plaintiffs,              )
                                 )
v.                               )        No. 3:19–CV–296
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Defendant.               )
_____        )
                                 )
AMERICAN RELIABLE INSURANCE      )
COMPANY, et al.,                 )
                                 )
        Plaintiffs,              )
                                 )
v.                               )        No. 3:19–CV–469
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Defendant.               )
_____        )
                                 )
STATE FARM FIRE AND CASUALTY     )
COMPANY, et al.,                 )
                                 )
        Plaintiffs,              )
                                 )
v.                               )        No. 3:19–CV–470
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Defendant.               )
_____        )
                                 )
UNITED SERVICES AUTOMOBILE       )
ASSOCIATION, et al.,             )
                                 )
        Plaintiffs,              )
                                 )
v.                               )        No. 3:19–CV–472
                                 )
UNITED STATES OF AMERICA,        )
                                 )
```

2

Defendant.                                    )
                                              )
_____               )
                                              )
ALLSTATE FIRE AND CASUALTY                    )
INSURANCE COMPANY, et al.,                    )
                                              )
        Plaintiffs,                           )
                                              )
v.                                            )        No. 3:19–CV–474
                                              )
UNITED STATES OF AMERICA,                     )
                                              )
        Defendant.                            )
                                              )
_____               )
                                              )
AUTO-OWNERS INSURANCE                         )
COMPANY, et al.,                              )
                                              )
        Plaintiffs,                           )
                                              )
v.                                            )        No. 3:19–CV–478
                                              )
UNITED STATES OF AMERICA,                     )
                                              )
        Defendant.                            )
                                              )
_____               )
                                              )
PAUL W. ABBOTT, et al.,                       )
                                              )
        Plaintiffs,                           )
                                              )
v.                                            )        No. 3:20–CV–149
                                              )
UNITED STATES OF AMERICA,                     )
                                              )
        Defendant.                            )

## MEMORANDUM OPINION AND ORDER

In 2016, the Chimney Tops 2 Fire ("Fire") left the boundaries of the Great Smoky Mountains National Park. [Doc. 1, PageID 8–9].[1] The Fire burned surrounding areas and led to

_____

[1] Unless otherwise noted, all record citations reference *Reed v. United States*, 3:18–CV–201 (E.D. Tenn. 2018).

3

loss of life and property damage. After the Fire, numerous individuals ("Individual Plaintiffs") and several insurance companies ("Insurance Plaintiffs" and collectively with Individual Plaintiffs, "Plaintiffs") filed administrative claims with the United States for compensation for damages arising from the Fire. [*See*, *e.g.*, Doc. 1-3–1-4; Ex. to Notice, *Am. Reliable Ins. v. United States*, 3:19–CV–469 (E.D. Tenn. Nov. 19, 2019), Doc. 19-1; Ex. to Complaint, *Adkins v. United States*, 3:18–CV–310 (E.D. Tenn. July 25, 2018), Doc. 1-1]. The Individual Plaintiffs' administrative claims differ from Insurance Plaintiffs' claims. The Insurance Plaintiffs listed, among other claims, "negligently failing to provide timely and accurate notice and warning to Park neighbors, local government officials, local fire departments, local residents and visitors about the status of and imminent danger presented by The Chimney Top 2 Fire." [*See*, *e.g.*, Ex. to Notice, *Am. Reliable Ins.*, 3:19–CV–469, Doc. 19-1, PageID 52]. The Individual Plaintiffs did not list a failure to warn in their administrative claims. [*See*, *e.g.*, Doc. 1-3, PageID 153].

Eventually, the Individual Plaintiffs and Insurance Plaintiffs sued the United States. [Doc. 1; Doc. 112 (order consolidating cases)]. In their allegations, Plaintiffs allege that the National Park Service ("NPS") failed to monitor the fire, failed to comply with command structure requirements, failed to follow fire management requirements, and failed to warn others about the Fire. [Doc. 1, PageID 114, 119, 123, 138].[2] In total, groups of Plaintiffs filed eleven separate lawsuits. [*See* Doc. 112]. Previously, the United States filed Motions to Dismiss for Lack of Subject Matter Jurisdiction in all of them. [Docs. 23, 49]. After the resolution of those Motions to Dismiss, one claim remains for each of the consolidated cases, the negligent failure-to-warn claim.

---

[2] In *Reed*, Plaintiff Michael Reed also brought claims for wrongful death and loss of society and consortium. [Doc. 1, PageID 146–47].

4

Now, the United States has filed two more motions to dismiss. The first motion challenges the Court's jurisdiction for all Plaintiffs. [Doc. 109]. That motion argues that Plaintiffs' failure-to-warn claim falls into the misrepresentation exception to the Federal Tort Claim Act ("FTCA"). [Doc. 109-1, PageID 3854]. The second motion is only against the Individual Plaintiffs. [Doc. 110]. In it, the United States argues that the individual Plaintiffs failed to satisfy the presentment requirements of the FTCA by failing to include facts and allegations regarding the failure-to-warn claim in their administrative claims. [Doc. 110-1, PageID 3880].

After the United States filed the motions to dismiss, Plaintiffs filed responses to the Motions. [Docs. 128, 129]. Then, the United States filed replies, [Docs. 141, 142], and the Court heard oral argument, [Doc. 148]. For the reasons stated below, the Court DENIES the Motion to Dismiss regarding the misrepresentation exception and GRANTS the Motion to Dismiss regarding the presentment requirement.

## I. FTCA Background and Standard

The FTCA allows lawsuits against the United States:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988). However, there are "exceptions to this broad waiver of sovereign immunity," *Berkovitz*, 486 U.S. at 535; *see* 28 U.S.C. § 2680(h), and a procedural process that plaintiffs must follow when bringing a lawsuit, 28 U.S.C. § 2675(a).

Here, the United States claims that Plaintiffs' failure-to-warn claim falls into one of the exceptions to the United States' waiver of immunity, the misrepresentation exception. [Doc. 110-

1, PageID 3854]. Title 28 United States Code § 2680(h) makes exceptions for the waiver of immunity, including for "[a]ny claim arising out of . . . misrepresentation . . . . " The United States posits that the Plaintiffs' remaining claim falls into this exception.

Additionally, the United States argues that the Individual Plaintiffs failed to meet all procedural requirements of the FTCA by failing to present and give notice of their failure-to-warn claim. The FTCA requires plaintiffs to "present" any claim to a federal agency before filing a lawsuit against the United States. 28 U.S.C. § 2675(a). While the Individual Plaintiffs filed administrative claims for their losses, the United States argues that the administrative claims did not contain any information regarding the Individual Plaintiffs' failure-to-warn claims and did not give notice to the United States of those claims.

The United States can file a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to assert its immunity. *See A.O. Smith Corp. v. United States*, 774 F.3d 359, 361–62 (6th Cir. 2014). A Rule 12(b)(1) motion comes in two forms, a facial or a factual challenge. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). The United States brought a facial challenge, which "is a challenge to the sufficiency of the pleading itself." *Id.* When a challenge is based on the sufficiency of the pleadings, a court accepts the material allegations in the pleadings as true and construes them "in the light most favorable to the nonmoving party." *Id.* With a facial attack to subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)).

6

**II. The misrepresentation exception to the FTCA does not apply in this case because the underlying claim is negligence, not misrepresentation.**

As already mentioned, the United States is immune to suits arising from misrepresentation. The misrepresentation exception to the FTCA applies to "claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961); *see Block v. Neal*, 460 U.S. 289, 295–96 (1983). The Supreme Court accepted the "legal definition" of misrepresentation as a "duty to use due care in obtaining and communicating information upon which [the plaintiff] may reasonably be expected to rely in the conduct of his economic affairs . . . ." *Block*, 460 U.S. at 295–96; *Neustadt*, 366 U.S. at 706–07. Congress understood "misrepresentation" to carry this definition when enacting the FTCA. *Block*, 460 U.S. at 295–96.

The Supreme Court gave guidance for applying this exception. It acknowledged that the United States is immune from "liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Id.* at 297. In a footnote, the Supreme Court adds that some negligence claims involve a misrepresentation, in the dictionary definition sense of the word, and the misrepresentation exception doesn't apply to them. *Neustadt*, 366 U.S. at 711 n.26. For example, a claim may be "based upon a motor vehicle operator's negligence in giving a misleading turn signal." *Id.* (quoting William Prosser, *Remedies for Misrepresentation Handbook of the Law of Torts* 702–03, § 85 (1941)). These claims are really negligence claims, not misrepresentation claims. *Id.* Further, in the same footnote, the Supreme Court noted that misrepresentation "has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'" *Id.* (quoting Prosser, *supra*, at 702–03, § 85). Similarly, the Supreme Court even reproduced the American Law Institute's Restatement of Torts for the cause of action for negligent misrepresentation, which will be copied later in this opinion. *Id.* at 706 n.16 (quoting Restatement of Torts § 552 (Am. Law Inst. 1938)).

7

This language indicates that the misrepresentation exception tends to apply only in the commercial setting involving pecuniary damages. But other statements made by the Supreme Court make the exception less straightforward. The Supreme Court also said, "[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block*, 460 U.S. at 296. And the Court added that the exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id.* at 297. This statement implies the inverse, that the misrepresentation exception bars claims that focus on a "failure to use due care in communicating information . . . ." *See id.*

When applying these principles, the Supreme Court shed little light on the scope of the misrepresentation exception on the questions most present in this case, which are (1) when is a claim negligence or negligent misrepresentation and (2) does the misrepresentation exception apply outside of the commercial setting?

In one Supreme Court case, *Neustadt v. United States*, the Court held that the misrepresentation exception applied to both intentional and negligent misrepresentation. 366 U.S. at 710. The Supreme Court applied the exception when a Fair Housing Agency ("FHA") employee incorrectly appraised a home. *Id.* at 698. The employee appraised a home for a value of $22,750. *Id.* Two individuals, relying on the FHA appraisal, purchased the home for $24,000. *Id.* at 698–700. A month after moving in, cracks formed in the ceiling and walls of the home. *Id.* at 700. The home builder and four FHA inspectors investigated and discovered that the home sat on soil that caused the house to shift and crack. *Id.* After learning this, the homebuyers sued the United States "seeking recovery of the difference between the fair market value of the property and the purchase price of $24,000." *Id.* at 700. The plaintiffs claimed "that the FHA's inspection and appraisal of

8

the property for mortgage insurance purposes had been conducted negligently; [they] were justified in relying upon the results of that inspection and appraisal; and that they would not have purchased the property for $24,000 but for the carelessness and negligence of [FHA]." *Id.* at 700–01 (second alteration in original) (quote omitted). The misrepresentation exception to the FTCA barred the plaintiffs' claims. *Id.* at 710.

The claims in *Neustadt* are different than Plaintiffs' claim. While *Neustadt* and this case both involve some sort of communication, Plaintiffs in this case did not rely on the Government's representation when making a purchase or participating in commerce. Further, the *Neustadt* plaintiffs sought lost market value, a type of pecuniary damages, instead of losses attributed to property damage. While the Supreme Court did not rule that the misrepresentation exception only applied to pecuniary injuries or injuries arising in commerce, it didn't need to. The case before it was commercial in nature and the requested damages were for pecuniary injuries.

The second leading case from the Supreme Court also involves a home. *Block*, 460 U.S. at 290. In *Block*, the plaintiff received a loan through the Farmers Home Administration (FmHA) to construct a prefabricated home. *Id.* The plaintiff entered a contract for the home, and the contract "granted FmHA the right to inspect and test all materials and workmanship and reject any that were defective." *Id.* at 291. The FmHA inspected the home three times during construction, and the FmHA issued a report stating that the construction was approved by the FmHA. *Id.* at 292. After moving in, the plaintiff's heat pump malfunctioned, and the FmHA reinspected the home, finding 13 additional defects. *Id.* The homebuilder refused to fix the defects, and the plaintiff sued the United States. *Id.*

The district court dismissed the case, but the Sixth Circuit Court of Appeals reversed. *Id.* at 293–94. The Sixth Circuit said that even without contractual obligations, the plaintiff had "stated

a claim for negligence under the principle that one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care." *Block*, 460 U.S. at 293 (quote omitted). The Sixth Circuit ruled that the misrepresentation exception did not apply because the case involved negligence, which did not fall into the misrepresentation exception. *Id.*

On grant of certiorari, the Supreme Court affirmed the Sixth Circuit. *Id.* The Supreme Court ruled that even though plaintiff's case included misstatements, they were "not essential to plaintiff's negligence claim." *Id.* at 297. Instead, the claim addressed a failure to supervise under the Good Samaritan doctrine because the FmHA "voluntarily undertook to supervise construction of her house . . . . " *Id.* The Supreme Court went on to say that, absent the negligent misrepresentation exception to the FTCA, the plaintiff "could also have brought a claim for negligent misrepresentation to recover for any injury caused by her misplaced reliance on advice provided by FmHA officials and on the FmHA inspection reports." *Id.* at 298.

Again, the Supreme Court did not have to rule on the issues before this Court. The Supreme Court didn't need to determine if the misrepresentation exception blocks claims based on misstatements themselves, like a driver giving the wrong hand signal. With or without statements, plaintiff's claim survived the exception. However, the Court acknowledged that claims for negligence and negligent misrepresentation may have some overlap and that the misrepresentation exception to the FTCA would not necessarily block a negligence claim even if it would block a negligence misrepresentation claim with similar facts.

Looking to the above language from the United States Supreme Court, this Court cannot articulate a short rule that summarizes when the misrepresentation exception applies. While the "essence" of the misrepresentation claim is miscommunication, the exception doesn't cover all

miscommunication, especially if the miscommunications aren't "essential" to the claim. Further, the Supreme Court has never expressly ruled that the misrepresentation exception applies only in the commercial setting and only to pecuniary damages. The most concrete guidance instructs courts to give a serious look at the complaint to determine if a plaintiff truly brought a claim for negligence or negligent misrepresentation. Case law from other courts reinforces that guidance.

The Sixth Circuit has largely echoed the Supreme Court on the misrepresentation exception without further elaboration. *See generally Fitch v. United States*, 513 F.2d 1013 (6th Cir. 1975). In the most prominent Sixth Circuit case, *Fitch v. United States*, a plaintiff sued the United States because the Armed Forces erroneously drafted him into the Army. *Id.* at 1015. A member of the plaintiff's local draft board incorrectly transcribed the plaintiff's draft number on a document, leading to the incorrect enlistment. *Id.* Eventually, the United States learned of the error, and it discharged him from active duty. *Id.* The plaintiff sued the United States for "compensatory and punitive damages." *See id.* The district court awarded him damages for lost wages and punitive damages. *Id.*

The Sixth Circuit reversed the district court and ruled that the misrepresentation exception barred his claim. While the plaintiff alleged that the United States acted negligently, the court "look[ed] beyond the literal meaning of the language to ascertain the real cause of complaint." *Id.* (quoting *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)). And when looking beyond the literal language of the complaint, the Sixth Circuit determined that the plaintiff brought a claim for negligent misrepresentation, not negligence. *Id.* The plaintiff's claim arose out of and "occurred when Government agents misrepresented [plaintiff's] obligation to enter the Army, telling him that he was required to serve when, in fact, he was free from that duty." *Id.* at 1016.

11

While at first look, this case appears to support the proposition that the misrepresentation exception applies outside of the commercial setting, that conclusion is murky. The *Fitch* court specifically mentioned that the district court awarded lost wages, a type of pecuniary damages. *See Carr v. Lake Cumberland Reg'l Hosp., LLC*, No. CV 15–138–DLB–HAI, 2017 WL 1078636, at *4 (E.D. Ky. Mar. 21, 2017). The plaintiff did not request any other damages caused by his draft selection—no personal injuries or anything else. Additionally, he did not allege that the United States owed him a specific duty. The Sixth Circuit only briefly discussed a general obligation of the United States, "the duty of fair, equitable, and just treatment." *Fitch*, 513 F.2d at 1015.

These principles reinforce the United States Supreme Court rulings and add little to them. The Sixth Circuit's ruling shows that the misrepresentation exception applies to negligent misrepresentation claims and courts look to the complaint to determine the true cause of action. Further, the misrepresentation exception applies to situations where the plaintiff has not articulated a duty and is seeking lost wages and punitive damages.

Moving to the positions of the Parties, Plaintiffs argue that they pleaded a negligence claim, not misrepresentation. [Doc. 129, PageID 5650]. They contend that the Complaint shows a claim for negligence and focuses on the NPS's failure to warn as required under the Fire Management Plan. ("FMP"). [*Id.*; Doc. 1, PageID 138]. According to the Complaint, the FMP required the NPS to warn others about the Fire, and the NPS failed to do so. [Doc. 1, PageID 138]. Additionally, Plaintiffs argue that their claims arose from a failure to perform an "operational task." [Doc. 129, PageID 5650, 5664]. They further argue that their claims arise out of a failure to warn at all, not an inadequate warning, and that the misrepresentation exception should be limited to commercial contexts. [*Id.* at PageID 5650].

The phrase "operational task," as used by Plaintiffs, deserves some detailed attention. Courts have refused to apply the misrepresentation exception when the government made misstatements relating to government operations, like, communicating accurate weather data to airplanes. *See, e.g., Jimenez-Nieves v. United States*, 682 F.2d 1, 5 (1st Cir. 1982); *Ingham v. E. Air Lines, Inc.*, 373 F.2d 227 (2d Cir. 1967); *Sullivan v. United States*, 299 F. Supp. 621, 625 (N.D. Ala. 1968), *aff'd*, 411 F.2d 794 (5th Cir. 1969). In a Second Circuit case, *Igham v. E. Air Lines*, the court recognized that failing to inform and providing incorrect information are both misrepresentations. 373 F.2d at 239. But reading the misrepresentation exception too broadly "would exempt from tort liability any operational malfunction by the government that involved communications in any form." *Id.* It went on to say, "[w]here the gravamen of the complaint is the negligent performance of operational tasks, rather than misrepresentation, the government may not rely upon § 2680(h) to absolve itself of liability." *Id.*

Along with their operational task argument, Plaintiffs cite several cases for the position that the misrepresentation exception only applies in the commercial setting, which is, as this Court has pointed out, an open question. *In re Flint Water Cases*, 482 F. Supp. 3d 601, 638 (E.D. Mich. 2020) ("The Supreme Court has not clarified whether the scope of the exception is limited to financial or commercial misrepresentations, and circuit courts have reached discordant answers." (quote omitted)). Plaintiffs ask this Court to limit the misrepresentation exception to commercial misrepresentations. [Doc. 129, PageID 5657].

The United States disagrees with Plaintiffs' arguments. The United States takes the position that Plaintiffs' claims arise out of the dissemination of inaccurate information or the failure to disseminate information. [Doc. 109–1, PageID 3859]. The United States says that the exception applies whether the claims are based on communication or failure to communicate because the

claim is based on the relay of information and arises out of a misrepresentation. [Doc. 109–1, PageID 3859–60]. The United States goes on to say that when looking past the terms in the Complaint, the real allegations here are claims for the tort of misrepresentation, not the tort of negligence. [*Id.* at PageID 3859].

When arguing that Plaintiffs' claims are for negligent misrepresentation, the United States points to a flood case with extensive property damage. [*Id.* at PageID 3858]. In *National Manufacturing Company v. United States,* 210 F.2d 263, 275 (8th Cir. 1954), the plaintiffs "alleged that the government employees carelessly and negligently disseminated misinformation respecting the course and action of the flood waters; that as a direct result of negligent assurances the plaintiffs were misinformed; and that the [government] employees negligently and carelessly assured the plaintiffs that the river would not overflow." *Id.* (alternation in original) (quote omitted). The court ruled that the misrepresentation exception of the FTCA barred the claims. *Id.* However, that court did not rely on the legal definition of "misrepresentation"; instead, it turned to the dictionary definition. *Id.* It defined "misrepresentation" as "to give a false, improper or imperfect representation" *Id.* The court decided the case before the above-mentioned Supreme Court cases, and those Supreme Court cases cast serious doubt on the reliability of *National Manufacturing Company* and the United States' argument because the case does not look to the common law tort of misrepresentation and the legal definition of misrepresentation.

In its argument, the United States also points to two cases from the Eastern District of Tennessee. In one of the cases, *Dyer v. United States*, a plaintiff worked at a nuclear facility in Oak Ridge, Tennessee. 96 F. Supp. 2d 725, 737 (E.D. Tenn. 2000). During her tenure, she allegedly was exposed to toxic substances. *Id.* She claimed that no one told her which substances she was working with and "the Government mandated a policy of non-disclosure and misrepresentation

that has continued to prevent discovery of the composition of the substances she encountered . . . . " *Id.*

On a motion to dismiss for lack of subject matter jurisdiction, the *Dyer* court ruled that it did not have jurisdiction. *Id.* at 727. It ruled, in part, that the misrepresentation exception to the FTCA applied. *Id.* at 738. The court reasoned that the plaintiff's "claims ar[ose] out of the Government's alleged withholding or misrepresentation of information concerning working conditions at Oak Ridge . . . . " *Id.* These alleged misrepresentations included "claims the Government intentionally misrepresented the fundamental nature of the toxins [she] encountered while working at Oak Ridge . . . . " *Id.* at 737. Further, the court ruled in the decision that plaintiff had not established a specific duty that the United States had breached, meaning that the plaintiff was relying on the misstatements for her claim. *Id.* at 733, 734, 736–38.

In the second case from the Eastern District of Tennessee cited by the United States, the court specifically held that "the misrepresentation-exception is just as applicable to actions involving personal injury, wrongful death, or property damages, as it is to those involving only financial or commercial loss." *Lloyd v. Cessna Aircraft Co.*, 429 F. Supp. 181, 187 (E.D. Tenn. 1977). The court applied the exception when a third-party plaintiff sought damages from the United States for the negligent inspection, testing, and issuance of an airworthiness certificate for a plane that crashed. *Id.* at 182–83. The third-party plaintiff argued that the United States, through the Federal Aviation Administration and its employees, should have known that the plane was not airworthy. *Id.* The court mentioned that the Supreme Court interpreted "misrepresentation" to mean the legal definition of the word, *id.* at 182, and then ultimately ruled that the alleged conduct and failure to inspect and report "could amount to nothing more than a misrepresentation as to the true condition of the aircraft involved." *Id.* at 187. The court also said that "where the negligence

15

of federal employees, whether by inspection, testing, diagnosis, or otherwise, has resulted in the conveyance of erroneous information, . . . any action against the national sovereign based on the Federal Tort Claims Act, . . . is barred by the misrepresentation exception." *Id.* at 185.

Neither of these cases are directly applicable to the case at hand. The *Dyer* court ruled that the United States did not owe a duty to the plaintiff. Without a duty, plaintiff's claims could not be for negligence, leaving only negligent misrepresentation. Here, Plaintiffs allege that the United States owed them a duty. *Lloyd* is even easier to distinguish because of the Supreme Court's decision in *Block*. The *Lloyd* court applied the misrepresentation exception broadly, to include some conduct that could support a claim for negligence according to *Block*. While the *Lloyd* court is not necessarily wrong on the merits of that case, it does not analyze whether the United States had a duty independent of its miscommunication like the Supreme Court in *Block*.

With all that said, in this case, the misrepresentation exception to the FTCA does not apply for two reasons. First, Plaintiffs have pleaded negligence, not negligent misrepresentation. Second, the misrepresentation exception to the FTCA is largely limited to commercial settings. While the FTCA may apply in some non-commercial settings, this case should not be a deviation from the normal application of the misrepresentation exception.

Beginning with the first reason, when looking at the Complaint, Plaintiffs alleged negligence, not negligent misrepresentation. While Plaintiffs' allegations involve lack of communication or miscommunication, they all allege that the NPS and United States, under the FMP, owed them a duty to notify "Park neighbors, Park visitors and local residents . . . of all planned and unplanned fire management activities that have the potential to impact them." [Doc. 1, PageID 138]. Plaintiffs are not arguing that they relied on information from Defendant or that

Defendant expected Plaintiff to rely on that information. Instead, Plaintiffs allege, simply, that Defendant had a duty to notify others of fire management activities.

This allegation differs from the common law definition of misrepresentation accepted by the Supreme Court. As noted by the Supreme Court in a footnote, a misrepresentation claim alleges that:

> One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if
>> (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and
>> (b) the harm is suffered
>>> (i) by the person or one of the class of persons for whose guidance the information was supplied, and
>>> (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.

*United States v. Neustadt*, 366 U.S. at 711 n.16 (quoting Restatement of Torts § 552 (Am. Law Inst. 1938)). This cause of action differs from Plaintiffs' allegations in their Complaints. While Plaintiffs allege that they would have acted if the NPS provided notification, it is not cast in the light that Plaintiffs should have been told based on the expectation of reliance. Instead, they rely on an actual duty, not an expectation that the NPS would "exercise care and competence in obtaining and communicating the information which its recipient is justified in expecting . . . . " *Neustadt*, 366 U.S. at 711 n.16. Further, there is nothing in the Complaint that suggests that the United States made communication or didn't communicate to "influence [Plaintiffs'] conduct . . . . " *Id.* Plaintiffs' allegations suggest that they would have acted if they had known of some risks, but there is nothing to suggest that the United States, either negligently or intentionally,

17

told them anything to influence their conduct. [*See* Doc. 1, PageID 144]. Plaintiffs' have alleged negligence.

If the Court were to rule in Defendant's favor on this issue, it would be required to find that Defendant did not have a duty to perform the tasks that Plaintiff alleges. Defendant has not asked the Court to rule in that way. Instead, they just ask the Court to construe the allegations as negligent misrepresentation. It cannot do so. If Plaintiffs fail to establish a duty and a breach, a decision will be made on the merits of the case, not by construing the claims to fit into the misrepresentation exception.

In addition to that reason, the misrepresentation exception to the FTCA should be usually confined to the commercial setting and to pecuniary damages. While no authority binds this Court on the issue, the persuasive authority supports this limitation. Even though the *Lloyd* case from this district held the opposite, the Sixth Circuit's *Fitch* case specifically applied the misrepresentation exception to lost wages and punitive damages. Further, the Supreme Court has acknowledged that the tort of misrepresentation usually occurs in the commercial setting. Additionally, one of the most recent cases from within the Sixth Circuit addressing the issue, *In re Flint Water Cases*, held that the misrepresentation exception applies in the commercial setting. While this Court will not go so far to say that the misrepresentation exception only applies in the commercial setting or to pecuniary damages, the exception should largely be confined to the commercial setting.

This case is not an exception to the general limitation of the misrepresentation exception. Here, Plaintiffs have alleged that the United States had an independent duty to warn and that their injuries arose out of a failure to communicate. This case is missing many facts that would make it like a commercial transaction, such as, discussions between the parties, an expectation of reliance,

18

or an attempt to persuade the injured parties. Therefore, this case is not a case of negligent misrepresentation, let alone one of the abnormal misrepresentation cases that might occur outside of the commercial setting and with damages other than pecuniary damages.

As Plaintiffs have pleaded a negligence cause of action and the misrepresentation exception is largely confined to the commercial setting, the United States Motion to Dismiss for Lack of Subject Matter Jurisdiction as to all Plaintiffs, [Doc. 109], is DENIED.

## III. Individual Plaintiffs failed to present their negligent failure-to-warn claim in accordance with the FTCA.

The FTCA prevents any action from being instituted against the United States unless the plaintiff first filed a claim with the United States. 28 U.S.C. § 2675(a). Any plaintiff must "first present[] the claim to the appropriate Federal agency . . . . " *Id.* The Sixth Circuit states that "the requirements of § 2675 are met 'if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claims.'" *Knapp v. United States*, 844 F.2d 376, 379 (6th Cir. 1988) (quoting *Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989)). The amount of notice required is described as "minimal." *Id.* The notice requirement, along with the sum certain requirement, are collectively referred to as the presentment requirement.

Generally, plaintiffs provide notice by filing an SF–95 form. *See Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994); *see also* 28 C.F.R. § 14.2(a).[3] An SF–95 form is not required, and a plaintiff can give notice to the United States by providing less notice than

---

[3] *Glarner* appears to suggest that a claimant who completes the SF–95 will satisfy the requirements of 28 U.S.C. § 2675. *See Glarner*, 30 F.3d at 700 ("If the claimant completes the SF[–]95, he will satisfy these requirements . . . . "). The issue here is whether Plaintiffs submitted a *completed* SF–95 form.

what is required on the form. *Id.* In this case, the Individual Plaintiffs filed SF–95 forms. [*See, e.g.,* Doc. 111-1, PageID 3901]. As to the "Basis of Claim," the Individual Plaintiffs wrote on the forms:

> The U.S. government through its employees, failed to follow mandatory regulations to monitor and extinguish a fire in the Great Smoky Mountains National Park, thereby allowing it to spread beyond the park boundaries onto claimants' private property, destroying their property.

[*See, e.g.*, *id.*]. Some of the claims go into detail about damages for the individuals, but the "Basis of Claim" on the SF–95 forms are consistent. The Individual Plaintiffs' SF–95s contain no information about a failure to warn or facts related to a failure-to-warn claim. In fact, in the SF–95 forms, as the Individual Plaintiffs note in their response to the motion, they explain how the Government's negligence caused their injuries by "allowing [the Fire] to spread beyond the Park boundaries onto claimant's private property, destroying their property . . . . " [Doc. 128, PageID 5639]. To the Court, this language makes a claim based on NPS's failure to extinguish the Fire rather than a failure-to-warn claim. Perhaps anticipating the Court's reading of the language, and that it might "wonder how a failure to warn claim would have 'allow[ed the fire] to spread beyond the park boundaries," the Individual Plaintiffs argue that it is part of their theory that NPS "should have warned the Gatlinburg Fire Department and local officials who could have helped to fight the fire or control its spread." [*Id.* at PageID 5639 n.6 (alteration in original)]. The Court is not convinced. Also, the Court notes the contrast between the SF–95 filed by the Individual Plaintiffs with that filed by the Insurance Plaintiffs, which states, for example, that they brought a claim for, "negligently failing to provide timely and accurate notice and warning to Park neighbors, local government officials, local fire departments, local residents and visitors about the status of and imminent danger presented by The Chimney Top 2 Fire." [*See* Doc. 19-1, PageID 52, *American Reliable Ins. v. United States*, 3:19–CV–469 (E.D. Tenn. Nov. 19, 2019)].

Individual Plaintiffs argue that they met the presentment requirement because their failure-to-warn claim is related to the information in their Basis of Claim. [Doc. 128, PageID 5638]. They argue that they provided enough information for the United States to investigate the claim. [*Id.*]. Further, according to the Individual Plaintiffs, the United States has had enough notice because this lawsuit has been pending for three years. [*Id.* at PageID 5642–43]. Individual Plaintiffs also contend that their allegations that the NPS didn't follow mandatory regulations should have put the United States on notice regarding a failure-to-warn claim. [Doc., 128, PageID 5642–43].

Individual Plaintiffs rely heavily on *Glarner v. U.S., Dep't of Veterans Admin.*, 30 F.3d 697 (6th Cir. 1994). The case is a prime example of "minimal notice." In *Glarner*, the plaintiff suffered a series of unfortunate medical events while in a Veterans Administration Medical Center. *Id.* at 699. Over a period of months, the plaintiff had pain in his hip, a loose and dislocated hip, improper bone settings, multiple surgeries, half-body and full-body casts, slip-and-falls, a hairline fracture, injuries worsened by medical care, and ultimately a metal rod in his femur. *Id.* After all of that, he lost the ability to bend his knee, his condition deteriorated after being discharged, his lifestyle changed, and he couldn't drive a car as a result of the medical care. *Id.*

While he was still in the hospital, he went to the Disabled American Veterans Office inside the hospital and said that he "wanted to file a negligence claim against the hospital." *Id.* He told an employee in the office that he thought he was totally disabled because of the medical treatment. *Id.* The employee completed a form for the plaintiff, and he signed it. *Id.* The form was not an SF–95, but rather a claim for disability benefits under 38 U.S.C. § 1151, and it said, "I feel that I am entitled to compensation as a result of this negligence." *Id.* at 699–700. Later, the plaintiff sued the United States under the FTCA, and the United States argued that he never presented his claim. *Id.* at 699. The district court dismissed the case. *Id.*

On appeal, the Sixth Circuit ruled that the plaintiff satisfied the notice requirement of the FTCA but not another requirement under the statute. *Id.* When discussing the notice requirement, the circuit court said that an SF–95 was not required if a plaintiff otherwise meets the requirements of the FTCA. *Id.* The court of appeals went so far to say that "[i]f the claimant completes the SF–95, he will satisfy these requirements . . . . " *Id.* But even without the SF–95, the plaintiff's notice met statutory requirements. *Id.* He "filed [a] form and mentioned his belief that there was negligence. In addition, he was still a patient in the hospital at the time, so VA officials could easily have investigated what they needed to know." *Id.*

While the plaintiff in *Glarner* gave minimal notice by stating "I feel that I am entitled to compensation as a result of this negligence," he made this statement to a government employee while in the hospital and suffering from "this negligence." *Id.* at 699–700. Here, Individual Plaintiffs argue similarly that they also gave minimal notice of their failure-to-warn claim, but the Court disagrees. The SF–95 is devoid of any fact or legal allegation that put the United States on notice that it needed to investigate, for the purposes of the Individual Plaintiffs' FTCA claims, the actions of the NPS and its employees as it relates to a failure-to-warn claim. The Individual Plaintiffs gave minimal notice and filled out an SF–95 for other claims, including for claims arising out of a failure to "monitor"[4] or "extinguish," but not for a failure to warn.

---

[4] Individual Plaintiffs did not make the argument that the term "monitor" inherently included "warning" about the object being monitored. They only note that they disagree with the Government's "premise" that following regulations "to monitor and extinguish . . . does not encompass a failure to warn . . . . " [Doc. 128, PageID 5641 (internal quotation marks omitted)]. Even if they had elaborated on the point, the argument would appear groundless as the plain meaning of the word "monitor" does not include reporting or warning about what is monitored. *Monitor*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/monitor (last visited Jan. 26, 2022) ("to watch, keep track of, or check usually for a special purpose").

The United States, on the other hand, relies on a case that, for all practical purposes, is indistinguishable from the situation here. [Doc. 110-1, PageID 3882]. In *Roma v. United States*, a plaintiff filed an SF–95 but then went to court with additional, somewhat related claims. 344 F.3d 352 (3d Cir. 2003). The plaintiff had suffered smoke-inhalation injuries while fighting a fire at a Navy air station. *Id.* at 354. His lawsuit alleged that the United States and its employees caused his injuries in two ways. *Id.* at 355. First, federal defendants caused the injuries by negligently starting the fire; second, federal defendants told him to remove his breathing apparatus. *Id.* Previously, when he filed his SF–95, he only mentioned the second cause of action, i.e., that he was told to remove his breathing apparatus. *Id.* at 363.

The Third Circuit held that the plaintiff had not met the presentment requirements of the FTCA as to the claim regarding the negligent starting of the fire. *Id.* The court decided that "facts concerning how the fire started and any negligence by federal employees in failing to prevent it are entirely distinct from the conduct involved in supervising the firefighting operations, including . . . instruction to" remove his breathing apparatus. *Id.*

The *Roma* case is analogous to the case here. While the Individual Plaintiffs put the United States on notice that they were seeking damages for claims arising out of firefighting and monitoring, they didn't mention any facts or allegations for the distinct claim regarding failing to warn. If the Court were to find that the Individual Plaintiffs met the notice and presentment requirement of the FTCA as to the failure-to-warn claim, then the requirement of 28 U.S.C. § 2675(a) has no real meaning. The Individual Plaintiffs did not give any notice of their failure-to-warn claim. In short, Individual Plaintiffs' failure-to-warn claim is a different claim from their claims related to their failure-to-monitor and failure-to-extinguish claims. It is based on a different theory of negligence, involves a different set of operative facts, is based on the acts of a different

23

group of employees, and it relies on different policies and regulations applicable to NPS-firefighting tasks. *See Smith v. United States*, No. CV 7: 20–094–DCR, 2021 WL 206355, at *8 (E.D. Ky. Jan. 20, 2021), *appeal dismissed*, No. 21–5187, 2021 WL 2222846 (6th Cir. Apr. 2, 2021)*.*

The Individual Plaintiffs also argue that their claims should not be dismissed because the United States had actual notice and the presentment requirement is not jurisdictional. But in the Sixth Circuit, for now, the notice requirement is a jurisdictional requirement. *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981) (ruling that the requirements of 28 U.S.C. § 2675(a) are "jurisdictional requirements, not capable of waiver or subject to estoppel"). There is, however, a strong argument that this requirement should no longer be applied as jurisdictional.

That argument was recently strengthened by *Copen v. United States*, 3 F.4th 875, 882 (6th Cir. 2021). In that case, the Sixth Circuit ruled that "neither governing precedent nor the structure of the statute support the conclusion that Congress has plainly attached a jurisdictional label to the sum certain requirement." *Id.* The sum certain requirement, like notice, is part of the FTCA's presentment requirement. The Sixth Circuit also indicated that this ruling was based on a change in Supreme Court precedent, but the Sixth Circuit did not explicitly change its stance on the notice requirement. *Id.* at 880, 882. While the Sixth Circuit may very well change its precedent in the future, for now, the notice requirement of 28 U.S.C. § 2675(a) is jurisdictional, and "not capable of waiver or subject to estoppel." *Garrett*, 640 F.2d at 26. *Garrett*, until overruled, however, is binding on district courts in the Sixth Circuit. The Court also notes, however, that even if the requirement should no longer be considered as jurisdictional, it could still be raised as a motion to dismiss based on a failure to state a claim "up to . . . trial on the merits." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006). Even if that required an amendment to the Government's answer, the

24

Court would not consider the issue waived since it has been raised by the Government "at a pragmatically sufficient time . . . ." *Vanhoy v. United States*, 514 F.3d 447, 451 (5th Cir. 2008).

Because the Individual Plaintiffs did not satisfy the notice requirement of the FTCA and the requirement is jurisdictional, this Court does not have subject matter jurisdiction of their failure-to-warn claims. Therefore, the United States Motion to Dismiss, [Doc. 110], is GRANTED.

## IV.    Conclusion

The United States filed two Motions to Dismiss for Lack of Subject Matter Jurisdiction. The first pending Motion to Dismiss for Lack of Subject Matter Jurisdiction, [Doc. 109], is DENIED because the misrepresentation exception to the FTCA does not insulate the United States from these claims. However, the second pending Motion to Dismiss for Lack of Subject Matter Jurisdiction, [Doc. 110], is GRANTED because the Individual Plaintiffs failed to satisfy the presentment requirement of 28 U.S.C. § 2675(a).

As the Court has determined that it does not have subject matter jurisdiction over the Individual Plaintiffs' remaining claim, the following cases are SEVERED from the consolidated case and DISMISSED without prejudice:

- *Reed v. United States*, 3:18–CV–201 (E.D. Tenn. 2018);
- *Anculle v. United States*, 3:18–CV–308 (E.D. Tenn. 2018);
- *Adkins v. United States*, 3:18–CV–310 (E.D. Tenn. 2018);
- *Vance v. United States*, 3:19–CV–283 (E.D. Tenn. 2019);
- *Barnes v. United States*, 3:19–CV–296 (E.D. Tenn. 2019);
- *Abbott v. United States*, 3:20–CV–149 (E.D. Tenn. 2020).

Further, it hereby ordered that all remaining actions continue to be consolidated and that all future filings for the consolidated case will be in *American Reliable Insurance Company v. United States*, No. 3:19–CV–469 (E.D. Tenn. 2019).

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE