## DECLARATION OF GORDON BALL

I, Gordon Ball, declare the following statements are true and correct. The following statements are of my own personal knowledge and if called as a witness, I would competently testify regarding this.

Pursuant to 28 U.S.C. §1746, I, Gordon Ball, declare:

1. I am a member of good standing of the bar of the State of Tennessee and am admitted to practice before the United States Supreme Court, and the United States Court of Appeals for the Third, Fourth, Sixth, Seventh and Eleventh Circuits. I am admitted to practice in the Federal District Court of the Eastern District of Tennessee and have been so admitted for 47 years.

2. I am one of the plaintiffs' counsel in the actions concerning the Gatlinburg fire of November 28, 2016. On May 23, 2018, the plaintiffs' counsel filed the "*Reed*" complaint in the Federal District Court of the Eastern District of Tennessee. The *Reed* complaint specifically alleged failure to warn in count four of the complaint. Many months before we started drafting the *Reed* complaint, we filed the SF-95 forms with the government for Mr. Reed, Mr. England and approximately 200 other claimants. When we filed the SF-95 forms we were aware of the minimal notice requirements as interpreted by the Sixth Circuit of the United States.

3. On or about July 2, 2018, I received a memorandum from my paralegal concerning a call he and Sid Gilreath had with government counsel, Ted Atkinson, and

1

others. (A copy of the memorandum is attached hereto as Exhibit 1 to the instant Declaration). In pertinent part the memorandum stated:

> [Attorney Atkinson] said they were aware of 202 claims and wanted to know if we had others and how many suits we were going to file. We told him we had another 60 or so claims that wouldn't be ripe to file complaints on until January. . . .
>
> \* \* \*
>
> (1) He asked if we filed the first complaint ([on behalf of Plaintiffs] Reed and England) as a test case. . . . He said other than damages, discovery was going to be the same, case by case, so a "test case" sounded good to him. . . .
>
> (2) We asked Atkinson about whether they intended to move or dismiss on technical or administrative grounds (having to do with how we submitted our Form 95's – failure to exhaust administrative remedies), and he said "no, we are not looking to sand-bag you and it looks like with the exception of a couple of rental claims, all the Form 95s are timely and in proper order." That doesn't mean the judge can't dismiss it sua sponte, since it's a jurisdiction issue and the DOJ can't waive it. . . .
>
> \* \* \*
>
> (4) As expected, he said they plan to file a MTD based on the discretionary function exception, sovereign immunity, and on state-law grounds. . . .

Exhibit 1.

4.     On July 17, 2018, I personally had my first call with the Department of Justice (DOJ) attorneys defending the *Reed* case. I expressed my concern that the SF-95 administrative forms should be satisfactory and complete as I didn't want any motion to dismiss to be filed based on the completeness of these forms. I was assured orally by DOJ counsel that the forms were complete and the Government had no problems with the forms or their completeness. I also knew and was told by the Government's counsel that

2

the Government had read the complaint. This assurance was followed by a letter of July 17, 2018 which also stated that the government was not aware of any jurisdictional defects in the SF-95 forms. (A copy of the letter is attached hereto as Exhibit 2 to the instant Declaration). In reliance on the oral representations of DOJ counsel and DOJ counsel's letter of July 17, 2018, I did not amend the claim forms of any plaintiffs in any manner, I used substantially similar SF-95 forms for later presented claims, and I filed five more complaints after *Reed* on behalf of individual plaintiffs without first amending their SF-95 administrative forms or filing new forms that used the specific phrase "failure to warn."

5. On June 1, 2021, almost three full years later, the Government and the same DOJ counsel who gave me the oral assurance and letter filed a jurisdictional motion to dismiss based on the lack of completeness of the SF-95 administrative forms.

6. I remembered my conversation with the DOJ counsel in 2018 and searched my computer files but was unable to find any proof of the oral conversation or the letter. I called the DOJ counsel to confirm the oral representations made in 2018 but DOJ counsel told me I was wrong and didn't remember the oral conversation accurately.

7. On February 28, 2022, I read the order of Judge Greer dismissing the *Reed* case and the cases of the other individual plaintiffs, and was so upset that I conducted another search for any evidence confirming the conversation I recalled, but that DOJ counsel had denied. After this additional exhaustive search, I eventually found an email with four attachments. The letter from DOJ was the fourth attachment. Exhibit 2.

3

8       When the defendant filed the motion to dismiss on June 1, 2021, I simply forgot about the letter of July 17, 2018. I remembered the oral conversation but did not have proof of the conversation until I located the letter on February 28, 2022. I immediately called my co-counsel, Ted Leopold, and read him the letter. Mr. Leopold later called DOJ counsel who I understand has confirmed the oral conversation and letter of July 17, 2018.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___22nd___ day of March 2022.

*[signature]*
Gordon Ball

4

From: **Don Daugherty** ddaugherty@gordonball.com
Subject: Gatlinburg Fire
Date: July 2, 2018 at 4:05 PM
To: Gordon Ball gball@gordonball.com



A guy named Theodore Atkinson of the DOJ called Sid a few minutes ago. Sid put him on the speaker phone in the conference room. He wanted to introduce himself and another guy (Elliot Davidson) and get more time to respond to the first complaint. He said they were aware of 202 claims and wanted to know if we had others and how many suits we were going to file. We told him we had another 60 or so claims that wouldn't be ripe to file complaints on until January.

(1) He asked if we filed the first complaint (Reed and England) as a test case. Said they were going to recommend to the Dept. of Interior that none of the claims be denied, so as to extend our SOL for all remaining claims. He said other than damages, discovery was going to be the same, case by case, so a "test case" sounded good to him. While we probably don't have a problem with the general idea of using Reed as a "test case" – since it is factually our best case – we don't want to agree not to file other lawsuits, because then we are assured of having Phillips from this point forward on everything. Obviously, they know this as well, which, I think, is why they don't want us filing any more cases. At this point, I think we should consider adding all of the ripe plaintiffs we have to this current complaint (that'll make it about 202 total), file it, and see if Phillips bows out and asks for it to be reassigned. Then . . . we can talk about using Reed as a "test case."

(2) We asked Atkinson about whether they intended to move to dismiss on technical or administrative grounds (having to do with how we had submitted our Form 95's - failure to exhaust administrative remedies), and he said, "no, we are not looking to sand-bag you and it looks like with the exception of a couple of rental claims, all the Form 95s are timely and in proper order." That doesn't mean the judge can't address it sua sponte, since it's a jurisdiction issue and the DOJ can't waive it.

(3) Atkinson said Auto-Owners has filed 400 subrogation Form 95 claims and wanted to know if we could see if their lawyer would agree with the "test-case" idea . . . if we do.

(4) As expected, he said they plan to file a MTD based on the discretionary function exception, sovereign immunity, and on state-law grounds. We talked about deadlines. Right now, their response is due by 8/20 and he wanted another 21 days. Under the Local

is due by 8/20 and he wanted another 21 days. Under the Local Rules, he gets that just by asking the court. So, they will be filing their MTD on 9/10. They will ask for extra pages since the complaint was so long. We'd get the same number of pages to respond. I also told him we'd also need some extra time to respond to their MTD if his brief was going to be that long. So, instead of October 1, we'd get at least until October 15 to respond. Then, by rule, they'll get a reply. Anyway, he's going to draft a proposed order on the briefing schedule to send to us in the next week or so.

Anyway, I told him we'd need to go over all of this with you and have another call afterwards to let him know what we want to do. So, we should have a discussion with Sid about all of this in the next few days, set up another call with Atkinson, and go from there.

Incidentally, Atkinson apparently got into trouble a while back (looks like 2016) for stalking a female attorney, hacking into her personal email account, and conducting a "catfishing operation" by creating a fake online profile to "entice" her. He was reprimanded, given a demotion in title, and banned from DOJ property. He landed in the Tort Branch of the DOJ.



U.S. Department of Justice

Civil Division

*Washington, DC 20530*

July 17, 2018

**BY E-MAIL**

Gordon Ball
Don Daugherty
W. Gordon Ball, Attorney at Law
7001 Old Kent Drive
Knoxville, TN 37919

Sidney W. Gilreath
Gilreath & Associates, PC (Knox)
550 Main Avenue
Suite 600
Knoxville, TN 37902

Lance Kristopher Baker
The Baker Law Firm
550 West Main Street
Suite 600
Knoxville, TN 37902

Re: <u>Reed, et al. v. United States</u>, No. 3:18-cv-00201-TWP-DCP (E.D. Tenn.)

Dear Counsel:

I write to follow up on the telephone conference of counsel for the parties on July 2, 2018, and our call with Gordon Ball today.

During our conversation, we discussed that the United States anticipates filing a motion to dismiss in response to Plaintiffs' Complaint. Before filing a motion to dismiss, the parties will participate in a meet and confer in accordance with the Court's Order Governing Motions to Dismiss, ECF No. 8. We agreed to an extension of 21 days for the United States to respond to the Complaint. We also reached tentative agreement on the dates for Plaintiffs' Opposition, the United States' Reply, and page enlargements for the briefing as follows:

    The United States' motion to dismiss is due on or before September 10, 2018 (not to exceed 75 pages);

Case 3:18-cv-00201-JRG-CRW   Document 163-1   Filed 03/23/22   Page 7 of 8   PageID #: 5996

EXHIBIT 2

Plaintiffs' Opposition is due on or before October 15, 2018 (not to exceed 75 pages); and,

The United States' Reply is due on or before November 15, 2018 (not to exceed 35 pages).

To that end, we have prepared a Stipulation to be filed pursuant to Local Rule 12.1 that will establish September 10, 2018, as the new deadline for the United States' response to Plaintiffs' Complaint. Moreover, we have prepared a proposed joint motion and order to extend the other dates and enlarge the page limitations for the briefing. We would appreciate it if you would let us know this week if the attached Stipulation, Joint Motion, and Proposed Order are acceptable.

We also discussed using the above-referenced *Reed* case as a test case. Based on our call and on an introductory call with Gordon today, you appeared amenable to using *Reed* as a test case. Please let us know how you would like to proceed once you have had a chance to discuss it among counsel.

For our part, we agreed to recommend to the Department of the Interior ("DOI") that it not deny any of your clients' administrative claims so that *Reed* could serve as a test case. DOI has informed us that if *Reed* serves as a test case, DOI will not deny any administrative claims already presented by your clients or any which are properly presented to DOI in connection with the Chimney Tops 2 Fire.

Finally, we discussed your concern that if *Reed* was used as a test case, you would not know if there were any jurisdictional defects in your clients' claims that would place any later brought case outside the Federal Tort Claims Act's statute of limitations. As we informed you, the United States cannot waive jurisdictional defects in administrative claims. However, the United States is not now aware of any jurisdictional defects in the 202 administrative claims you have filed on behalf of your clients arising out of the Chimney Tops 2 Fire.

Please let us know this week or early next week whether the joint motion and proposed order are acceptable, or if you have any suggested changes.

We look forward to hearing from you.

                                                    Regards,

                                                    Ted Atkinson

Attachments